AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)   Case No. **22 MR 580**
ONE BLACK MOTOROLA CELL PHONE )
SEALED IN DEA SELF-SEALING EVIDENCE )
ENVELOPE # S001265688 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated by reference).

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1), (b)(1)(B) | Possession with Intent to Distribute 50 grams and more of a Mixture or Substance Containing a Detectable Amount of Methamphetamine |

The application is based on these facts:
Please see the attached affidavit of DEA Task Force Officer Erick D. Castaneda, which is incorporated by reference and has been reviewed by AUSA Elaine Ramirez.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Erick D. Castaneda, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed__ *(specify reliable electronic means).*

Date: __04/12/2022__

*Judge's signature*

City and state: Albuquerque, New Mexico

Honorable Laura Fashing U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:

ONE BLACK MOTOROLA CELL PHONE
SEALED IN DEA SELF-SEALING
EVIDENCE ENVELOPE # S001265688;

LOCATED AT 2660 FRITTS CROSSING SE,
ALBUQUERQUE, NEW MEXICO, 87106.

Case No. _____

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Erick D. Castaneda, Task Force Officer ("TFO") of the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—one electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a TFO with the DEA, and have been since June 2020. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest and search warrants. Furthermore, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516. Prior to being a TFO with the DEA, I worked as

a full-time sworn law enforcement officer with the Bernalillo County Sheriff's Office ("BCSO") since June 2015.

3. In my time as a Sheriff's Deputy and a DEA TFO, I have received training including controlled substance identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects, including latent fingerprint collection and analysis.

4. As a certified Sheriff's Deputy and DEA TFO, I have participated in numerous investigations of individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, fentanyl, and other controlled substances as defined in 21 U.S.C. § 801. My experience as a TFO includes but is not limited to: conducting surveillance; interviewing witnesses; participating in arrests, searches, and seizures; working in an undercover capacity and working with informants and investigating money laundering cases. I have received training and experience in the investigation of violations of federal and state drug and money laundering laws. I have participated in the investigation of several drug trafficking conspiracies. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The property to be searched consists of one cellular telephone, as described in Attachments A and B (hereafter referred to as the "**Device**") and are identified as follows:

| **Device** |
|---|
| One black Motorola cell phone sealed in DEA Self-Sealing Evidence Envelope # S001265688. |

7. There are no serial numbers or other identifying numbers visible on the **Device** without manipulating it.

8. The **Device** is currently located at the Albuquerque DEA evidence locker, at 2660 Fritts Crossing SE, Albuquerque, New Mexico, 87106.

9. The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachments B.

## DRUG TRAFFICKING AND CELLULAR DEVICES

10. Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute and possess with intent to distribute controlled substances, I have learned the following:

    a. Those who possess illegal drugs for distribution often use electronic devices such as wireless or cellular telephones and smartphones. Such electronic devices are often used to communicate with coconspirators and customers through the telephone's standard capabilities to call and text, as well as through smartphone applications ("apps") such as WhatsApp, Snapchat, Pinger, Marco Polo and Facebook, which allow users to send and receive digital communications in various forms such as voice calls, text messages, image and video sharing, and live video conversations. Records of these communications, text messages, and contact lists are frequently retained

3

and stored on those electronic devices and within those apps. Based upon my training, experience, and knowledge of this investigation, I believe that such evidence and information is likely to be found in the Device.

b. Individuals involved in the illegal trafficking of controlled substances often maintain documents, records, and other evidence of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists and telephone address books. These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances including precursors, customer lists and amounts of money owed to the trafficker by customers and by the trafficker to his/her suppliers. All such records can also be produced and/or stored on cellular telephones and evidence of these transactions is often contained within cellular phones.

c. Drug dealers often travel domestically and internationally to facilitate their trafficking. Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, hotel and gas receipts, and passports and visas and their contents. Many of these items are accessible via the internet and can be downloaded and saved on the computer or other media such as cellular phones.

d.  Drug trafficking is a crime that necessarily involves at least two people – a buyer and a seller. Prior to engaging in the drug transaction, the buyer and seller must communicate and discuss the type of drug to be sold, the quantity, the price, and the location where the sale will take place. I know that drug dealers and their customers make use of cellular phones and smartphones to conduct these necessary communications.

e.  Information stored in electronic form on cellular telephones can provide evidence of drug trafficking and the identity of associates. For example, numbers stored on cellular telephones (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer is calling, and thus the identity of associates.

f.  Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, drug trafficking records, records of financial transactions involving drug trafficking proceeds, their drugs, and firearms. They usually take these photographs and/or videos with their cellular phones and store them in those cellular phones.

g.  I know that those engaged in drug trafficking have access to, and utilize, numerous cellular telephones, often at the same time in an effort to avoid law enforcement monitoring.

h.  Electronic information can remain on computer storage media, such as within cellular phones, for an indefinite period of time. I am aware that even when a user attempts to delete records from computer storage media, the records may still exist and be recovered through computer forensic techniques.

## PROBABLE CAUSE

11.     On February 22, 2022, at approximately 1327 hours, Albuquerque Police Department Officers (APD) were dispatched to a stolen vehicle call for service at 2501 Kathryn Ave., SE, in Albuquerque, New Mexico.

12.     Upon arrival, APD Officers observed a parked newer model Ram pick-up truck matching the description given by the calling party. Officers observed three male subjects inside the pick-up truck. The driver, who was later identified as JIMENEZ, exited the vehicle and began to grab items from the bed of the truck. Officers gave commands for JIMENEZ to get on the ground, and he complied. The front passenger was detained. The third passenger, who was sitting behind the driver, exited the vehicle and fled on foot.

13.     Officers confirmed the vehicle was stolen and contacted the registered owner to ask if he/she knew JIMENEZ and if JIMENEZ had permission to use the vehicle. The registered owner told the officers that he/she did not know JIMENEZ and had not allowed him to use the vehicle.

14.     APD Officers then conducted an inventory prior to towing the vehicle. During the inventory, officers located a large clear plastic bag containing a crystal-like substance underneath driver seat. The substance was later field-tested, and it tested positive for the presence of methamphetamine, and it had an approximate weight of 483.5 grams. In my training and experience, 483.5 gross grams of methamphetamine is inconsistent with personal use and instead indicative of possession with the intent to distribute. Officers located an unloaded Colt King Cobra .357 (serial # KC9868) firearm underneath the driver's seat next to the methamphetamine. Officers also located a black Motorola Smartphone (hereafter referred to as the "**Device**") in the center console.

15. Officers also located a large clear plastic bag containing a crystal like substance left rear floorboard. This substance also field-tested positive for the presence of methamphetamine and had an approximate weight of 164 gross grams. This amount is also consistent with drug trafficking and not personal use. Officers also located a loaded Century Arms AK style rifle (serial# AB2-C100235) on the front passenger floorboard, but the firearm did not have a round chambered.

16. Following his arrest, JIMENEZ was advised of and agreed to waive his *Miranda* rights. JIMENEZ claimed that he had borrowed the truck from a friend, but JIMENEZ was unable to provide the friend's name (only a moniker) and did not know any further information about him. JIMENEZ said that he had picked up the front passenger and later the rear passenger. JIMENEZ claimed that he was moving some items for his mother when APD showed up and arrested him.

17. When asked if there were any firearms in the vehicle, JIMENEZ admitted that there was a rifle inside the truck which he grabbed to move out of the way, but stated it was not his. He stated he was not aware of any other firearms in the vehicle. When asked about the methamphetamine that was found in the vehicle, JIMENEZ stated it was not his.

18. Based on the facts described above, there is probable cause to believe that the **Device** will contain evidence of JIMENEZ drug trafficking activities, specifically violations of 21 U.S.C. § 841 (a)(1), (b)(1)(B).

### Custody of the Devices to Be Examined

19. The **Device** is currently in the lawful possession of the DEA. As described above, they came into the DEA's possession incident to the arrest of JIMENEZ.

20. The **Device** is currently in storage at the Albuquerque DEA evidence locker, at 2660 Fritts Crossing SE, Albuquerque, New Mexico, 87106. Based on my training and experience, I know that the **Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of the DEA.

### TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   i. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

8

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

j. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

k. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

l. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

m. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

n. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

o. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and to access the Internet. In my training and experience, examining data stored on device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Device** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Device** because:

p. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

q. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

r. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

s. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

t. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Device** to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I submit that this affidavit supports probable cause for search warrants authorizing the examination of the **Device** described in Attachments A to seek the items described in Attachments B.

28. This affidavit was reviewed and approved by AUSA Elaine Ramirez.

13

*signature*

Erick D. Castaneda,

Task Force Officer

U.S. Drug Enforcement
Administration

Albuquerque District Office

Electronically signed and telephonically sworn
on April 12, 2022:

*signature*

HONORABLE LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

The property to be searched is one black Motorola cell phone sealed in DEA Self-Sealing Evidence Envelope # S001265688 (**Device**). **Device** is currently located at the Albuquerque DEA evidence locker, at 2660 Fritts Crossing SE, Albuquerque, New Mexico, 87106.

This warrant authorizes the forensic examination of **Device** for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1. All records and information on **Device** described in Attachment A that relate to violations of 21 U.S.C. § 841 (a)(1), (b)(1)(B) including:

    a. data and information identifying co-conspirators, customers, and suppliers;

    b. communications between co-conspirators, customers, and suppliers;

    c. data and information regarding the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. data and information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. photographs and/or videos;

    f. financial records or other information regarding the expenditure or disposition of proceeds from the distribution of controlled substances including all bank records, checks, credit card bills, account information, and other financial records; and

    g. records of travel.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.